EXHIBIT "A"

## LOAN AND SECURITY AGREEMENT

This Loan and Security Agreement (this, "Agreement"), made this _19 th_ day of July, 2013 by and between **LIFESTYLE HEALTHCARE GROUP, INC.,** a Delaware corporation authorized to do business in the Commonwealth of Pennsylvania, with an address at 790 Newtown-Yardley Road, Suite 425, Newtown, PA 18940 (the, **"Borrower"**), promises to pay to the order of **CUSTOMERS BANK,** with an office at 99 Bridge Street, Phoenixville, PA 19460 (**"Lender"**), at such office of Lender or at such other place as Lender may designate from time to time in writing, the principal sum of **NINE MILLION AND 00/100 ($9,000,000.00) DOLLARS** lawful money of the United States of America or so much thereof as may be disbursed to or for the benefit of Borrower by Lender in accordance with the terms of this Agreement and the Note, together with interest thereon from the date of each advance at the rates hereinafter provided, and both payable as hereinafter provided (the "Loan").

### WITNESSETH:

WHEREAS, Borrower has requested the Lender extend credit facilities (hereinafter referred to as the **"Loan"**) to it in the aggregate principal amount of NINE MILLION AND 00/100 ($9,000,000.00) DOLLARS, which Loan is to be used by the Borrower to finance the acquisition of two parcels of real property, to refinance existing indebtedness, to fund the Interest Reserve established hereunder, and to pay the costs associated with the continued development of the Project referenced herein, and the Lender is willing to extend such credit under the terms and conditions of this Agreement.

NOW, THEREFORE, the parties hereto, in consideration of their mutual covenants and agreements herein contained, and intending to be legally bound, hereby agree as follows:

### ARTICLE I - DEFINITIONS

1.01. **Definitions.** In addition to other words and terms defined elsewhere in this Agreement, as used herein the following words and terms shall have the following meanings, respectively, unless the context hereof otherwise clearly requires:

"Affiliate" means any person (1) which directly or indirectly controls, or is controlled by, or is under common control with the Borrower, a surety, or a subsidiary; (2) which directly or indirectly beneficially owns or holds twenty-five percent (25%) or more of any class of the voting stock or the partnership units of, as the case may be, the Borrower, any surety, or any subsidiary; or (3) twenty-five percent (25%) or more of the voting stock or partnership units of which is directly or indirectly beneficially owned or held by the Borrower, a surety, or a subsidiary. The term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

{Y0219847} v6

"Agreement" means this Loan and Security Agreement, including all exhibits and schedules hereto, as the same may be amended, modified or supplemented from time to time.

"Anti-Terrorism Statute" shall mean any law relating to terrorism or money laundering, including Executive Order No. 13224 and the USA Patriot Act.

"Collateral" means the stand-by letter of credit and such other property of Borrower that is specifically offered to secure the Indebtedness as set forth in Article IV of this Agreement;

"Commitment Letter" means that certain letter dated April 4, 2013, as the same may have been amended in writing from time to time, from Lender to Borrower pursuant to which Lender agreed to make the Loan and other credit facilities to Borrower.

"Debt" means the outstanding principal amount of the Loan together with all interest accrued and unpaid thereon and all other sums due to Lender in respect of the Loan, the Note, this Agreement, and/or any other Loan Document.

"Environmental Condition" means any condition affecting (i) the work place where business operations take place, or (ii) any natural resource, including without limitation the air, soil, surface and groundwater which must be reported to a Governmental Authority or which must be remediated under any of the Environmental Laws.

"Environmental Law" means any presently existing or hereafter enacted or decided federal, state or local statutory or common laws relating to pollution or protection of the environment, including without limitation, any common law of nuisance or trespass, and any law or regulation relating to emissions, discharges, releases or threatened release of pollutants, contaminants or chemicals or industrial, toxic or hazardous substances or wastes into the environment (including without limitation, ambient air, surface water, groundwater, land surface or subsurface strata) or otherwise relating to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of pollutants, contaminants or chemicals, or industrial, toxic or hazardous substances or wastes.

"GAAP" means generally accepted accounting principals, which is a widely accepted set of rules, conventions, standards, and procedures for reporting financial information, as established by the Financial Accounting Standards Board.

"Governmental Approvals" means all governmental and quasi-governmental approvals, permits and licenses that are necessary or required to obtain final land development under and pursuant to the Pennsylvania Municipalities Planning Code, Act of 1968, P.L.805, No.247, *53 P.S. §10101, et seq.*, including but not limited to any ancillary zoning approval that may be necessary to obtain such approval.

"Governmental Authority" means any federal, state, local or foreign government and any agency, commission, or other entity thereof authorized to enforce any of the Environmental Laws and/or to grant Governmental Approvals.

"Hazardous Materials" means any contaminants, hazardous substances, regulated substances or hazardous wastes that may be the subject of liability pursuant to any Environmental Law.

"Lien" means any mortgage, deed of trust, pledge, security interest, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or other), or preference, priority, or other security agreement or preferential arrangement, charge, or encumbrance of any kind or nature whatsoever (including, without limitation, any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing, and the filing of any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction to evidence any of the foregoing).

"Loan" means the Loan as defined in Section 2.01 hereof.

"Loan Document(s)" means this Agreement, the Note, and all other documents or applications of any kind relating to the Loan.

"Note" means the Note of the Borrower executed and delivered the same date as this Agreement, which shall provide, inter alia, for the terms of repayment of the Loan, together with all extensions, renewals, re-financing or re-funding in whole or in part.

"Obligations" means the indebtedness of the Borrower and any other Obligor evidenced by the Note or by any other Loan Document, including but not limited to any past, present or future advances, renewals, extensions and modifications thereof, and all interest, late charges, costs and fees of any type to be paid thereunder, and any and all other indebtedness of Borrower to Lender, direct or indirect, due or to become due, now existing or hereafter contracted of any nature whatsoever.

"Obligor(s)" means the Borrower and any other person or entity liable, either absolutely or contingently, for the payment of any Obligations to the Lender, evidenced by any Loan Document or otherwise, as well as any person or entity granting the Lender a security interest or Lien upon or in property (real or personal) to secure payment of all or a portion of said Obligations.

"Potential Event of Default" means the existence of any situation (but only for so long as it exists) which, if not cured or corrected within a certain period of time after the giving of notice by Lender, will constitute an Event of Default under Article VIII of this Agreement or the "Event of Default" provisions of any other Loan Document.

"Premises" means the real property located at and about New Road and Neshaminy Blvd., Township of Bensalem, Bucks County, Pennsylvania 19020, being Bucks County Tax Map Parcel Numbers 02-001-036-001 and 02-001-035.

"Project" means the development and construction of the facilities, structures and related site improvements comprising and relating to the new medical facility on and about the Premises in accordance with the Approved Plans.

"Regulated Substances" includes any substances, chemicals, materials or elements that are prohibited, limited or regulated by the Environmental Laws, or any other substances, chemicals, materials or elements that are defined as "hazardous" or "toxic," or otherwise regulated, under the Environmental Laws, or that are known or considered to be harmful to the health or safety of occupants or users of the Premises.

"USA Patriot Act" shall mean the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Public Law 107-56, as the same has been, or shall hereafter be, renewed, extended, amended or replaced.

1.02.  **Construction of Terms.**  Unless the context of this Agreement otherwise clearly requires, references to the plural include the singular, the singular the plural and the part the whole and "or" has the inclusive meaning represented by the phrase "and/or." The neuter shall be deemed to include the masculine and the feminine, as the context may require. The section and other headings contained in this Agreement preceding this Agreement are for reference purposes only and shall not control or affect the construction of this Agreement or the interpretation thereof in any respect.

1.03.  **Accounting Terms.**  All accounting terms not specifically defined herein shall be construed in accordance with GAAP consistent with those applied in the preparation of the financial statements referred to below, and all financial data submitted pursuant to this Agreement shall be prepared in accordance with such principles.

ARTICLE II - LOAN

2.01.  **Loan Amount.**  The Lender agrees, on the terms and conditions of this Agreement, to extend a credit facility (the, "Loan") to the Borrower in the aggregate principal amount of NINE MILLION DOLLARS ($9,000,000.00), which amount shall be allocated as follows:

(a)    $4,366,250.00 for the acquisition of the Premises;

(b)    $1,000,000.00 to refinance existing debt of Borrower;

(c)    $708,000.00 to fund the Interest Reserve established in accordance with section 2.04 of this Agreement; and,

{Y0219847} v6                                          4

(d)     $2,925,750.00 to fund closing costs for the Loan and the costs and expenses of and associated with the continued development of the Project, including those costs necessary to obtain and comply with the required Governmental Approvals,

pursuant to which, from time to time, Lender shall make advances to Borrower in such amounts as Borrower may request, up to an aggregate amount not in excess of Nine Million Dollars ($9,000,000.00), subject to the terms and conditions of this Agreement. Borrower covenants and agrees that Lender shall have no obligation to advance in the aggregate more than Nine Million Dollars ($9,000,000.00) on the Loan. The parties agree that the Lender shall have no obligation to make advances of the Loan at any time during the continuance of any Event of Default (that has not been waived in writing by the Lender) or if a Potential Event of Default then exists.

2.02.   **Loan Fee**.  Borrower shall pay to Lender a fee in the amount of Ninety Thousand ($90,000.00) Dollars, in consideration of the Loan, plus all costs and expenses incurred by or on behalf of Lender (including but not limited to reasonable attorney fees, appraisal fees, title insurance and flood certifications) in connection with the approval and closing of the Loan.  If Borrower shall elect and Lender agrees to extend  the Maturity Date of the Note in accordance with Section 2.c of the Note, Borrower shall and hereby agrees to pay as a condition thereof an additional fee of $22,500.00 to fairly and reasonably compensate Lender for the costs associated with and resulting from such an extension.

2.03.   **Payment Terms; Advances**.

(a)     The obligation of the Borrower to repay the unpaid principal amount of the Loan and to pay interest thereon shall be evidenced by the Note.  Payments by Borrower to Lender of principal and interest shall be in accordance with the schedule set forth in the Note.

(b)     All advances under the Loan shall be evidenced by the Note, which Note shall, _inter alia_, represent the obligation of the Borrower to repay all advances under the Loan.

2.04    **Interest Reserve**.  The amount of Seven Hundred Eight Thousand Dollars ($708,000.00) shall be allocated and reserved from the Loan for the payment of monthly payments of interest required under Section 2 of the Note (the "Interest Reserve"), which may be released from time to time by Lender for the account of Borrower for the payment of interest due on the Loan as and when due under the Note. No interest shall accrue upon any portion of the Interest Reserve until Lender actually disburses and/or credits to Borrower's account such portion(s) thereof, which will represent all or a portion of the then due and payable monthly interest installment, whereupon the sum(s) so disbursed and/or credited shall be added to the outstanding principal sum of the Loan and shall bear interest as provided for in the Note. During the continuance of an Event of a Default hereunder or under any of the Loan Documents, Lender shall have the  right, but not the obligation, to continue to disburse said monthly interest installments from the Interest Reserve. If, at any time during the Term of the Loan, (I)

the Interest Reserve is depleted, or (ii) Lender determines that the remaining Interest Reserve is insufficient to pay in full the remaining monthly installment payments of interest calculated at the then prevailing Interest Rate, Borrower shall within ten (10) business days of written notification from Lender, deposit with Lender, to be held as Interest Reserve, such amount of money that the Lender in its sole but reasonable discretion determines will be sufficient to satisfy the Borrower's remaining monthly and other payment obligations under the Note, for the balance of the term of the Loan. Establishment of an Interest Reserve shall in no way relieve Borrower or any Obligor of its obligation to pay interest as set forth in the Note and this Agreement. Lender shall periodically provide notice to the Borrower of the Loan funds disbursed from the Interest Reserve. The Interest Reserve shall be held in account no. 5987568 with Lender.

2.05   **Procedures for Advances**.

(a)   All advances to or on behalf of Borrower (except as otherwise expressly provided herein) are to be made at Lender's principal office or at such other place as Lender may designate in writing and shall, at Lender's option, be deposited in an account at Lender, established for this sole purpose; provided, however, that Lender reserves the right with respect to any request by Borrower for an advance, at any time and from time to time, to require that advances by Lender hereunder be made jointly to Borrower and any subcontractors, professionals and suppliers to be paid from the funds being advanced under such request.

(b)   Requests for advances shall be made by Borrower in writing and received by Lender at least two (2) days prior to the date upon which the requested funds are to be advanced, and if approved such request will be funded within one (1) business day after all conditions to Lender's obligations to make advances under this Article II and under Sections 3.01 and 3.02, as the case may be, have been satisfied.

2.07.   **Certain Limitations on Advances**.   Lender shall only be obligated hereunder to make advances for which the Loan proceeds are to be allocated under Section 2.01.   In no event shall Lender make advances of proceeds of the Loan for building materials, furnishings and labor and materials for the construction of any improvements upon the Premises.

2.08.   **Advance Not Waiver**.   Any advance by Lender of Loan proceeds hereunder made prior to or without the fulfillment by Borrower of all of the conditions precedent thereto, whether or not known to Lender, shall not constitute a waiver by Lender of the requirement that all conditions, including the non-performed conditions, shall be required with respect to all future advances.

ARTICLE III - CONDITIONS OF LENDING

3.01   **Conditions Precedent to Initial Advance**.   The obligation of the Lender to make the initial advance of the Loan is subject to the condition precedent that each of the following conditions shall have been satisfied in Lender's sole discretion, and the Lender shall have received (or waived receipt) on or before the date hereof all of the following

collateral documents, each in form and substance reasonably satisfactory to the Lender and executed by the appropriate parties:

      (a)    The following loan documents duly executed and delivered by Borrower, to Lender:

      1)   This Loan and Security Agreement;

      2)   The Note in principal amount of $9,000,000.00; and,

      3)   Such other and further Loan Documents as may be required by the Lender.

      (b)    Copies of any and all permits and approvals, including zoning approvals, which, as of the date of this Loan, have been obtained from and issued by any Governmental Authorities with regard to the Project; and,

      (c)   <u>Organizational Documents</u>.   The following organizational and corporate, partnership or comparable documents for the Borrower, as well as for any shareholder, member, partner or other equity owner of any of them, if such shareholder, member, partner or other equity owner is an entity:

      1)   True and complete certified copies of the articles of incorporation and by-laws, the certificate of organization and/or the certificate of limited partnership, as the case may be, and all amendments thereto;

      2) A current good-standing certificate from (A) the jurisdiction of its incorporation or formation and, (B) as to Borrower from the jurisdiction in which the Premises are located, if such jurisdiction is different from the jurisdiction of Borrower's state of incorporation or formation;

      3) A resolution, certified by the corporate secretary or the managing member, general partner or other appropriate party, as the case may be, authorizing the consummation of the transactions contemplated hereby and the execution, delivery and performance of the Loan Documents to be executed, delivered or performed by said corporation, limited liability company, partnership or other entity; and,

      4) A certificate of the corporate secretary, managing member, general partner or other appropriate party, as to the incumbency of the officers executing any of the documents required hereby, and, if Borrower, the mortgagor under any Mortgage (if different from Borrower), Guarantor or any member of any of them is a limited liability company, partnership or other entity:

(a)   The entity's operating, partnership or other organizational agreement and all amendments and attachments thereto, certified by a member, or other appropriate person, to be true and complete;

(b)   Any certificates, applications or other documents filed or required to be filed by the entity in the jurisdictions of its formation and where the Premises are located in order for it to do business in those jurisdictions; and

(c)   Any consents by members, partners or other equity holders required for the consummation of the transactions contemplated hereby.

(d)   The representations and warranties made to Lender herein, in the other Loan Documents and in any other document, certificate or statement executed or delivered to Lender in connection with the Loan shall be true and correct in all material respects on and as of the date of the initial advance with the same effect as if made on such date;

(e)   Satisfactory review and actual receipt by Lender of the stand-by letter of credit comprising the Collateral under Article IV hereof, in form and substance acceptable to Lender, and any other documentation reasonably required by Lender in connection therewith; provided, however, that Lender may, at Borrower's request, advance (into a controlled account only) an amount equal to the fee to be paid by Borrower for the SBLC, but Borrower shall not be entitled to those funds until it has satisfied, and Lender shall not be deemed to have waived, any conditions or requirements of this Article, including Lender's actual receipt of the SBLC.

(f)   Written Opinion of Borrower's Counsel in form and substance acceptable to Lender.

(g)   Payment of the Loan Fee(s) identified in Section 2.02.

(h)   Such other and further documents as may be required reasonably by the Lender in order to consummate the transactions contemplated hereunder.

3.02   <u>Conditions to Advances After the Initial Advance</u>.  Lender's obligation to make advances of proceeds of the Loan after the initial advance shall be subject to the satisfaction of the following conditions:

(a)   All conditions of Section 3.01 shall have been and remain satisfied as of the date of such advances;

(b)   There shall exist no Potential Event of Default or Event of Default;

(c)   The representations and warranties made to Lender herein, in the other Loan Documents and in any other document, certificate or statement executed or delivered to Lender in connection with the Loan shall be true and correct on and as of the date of the advance with the same effect as if made on such date;

(d)    Lender shall have received a written request for the advance, together with all such other documentation and information as Lender may reasonably require.

ARTICLE IV - COLLATERAL

4.01.  **Security.**

In consideration of the Loan,

(a)    Borrower covenants and agrees that the performance of this Agreement and the Loan Documents, and the payment and discharge of the indebtedness, and in consideration of the Loan, are and shall be secured by an irrevocable, stand-by letter of credit in the sum of NINE MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($9,500,000.00), in form and substance acceptable to Lender in its sole discretion, and issued by HSBC Bank USA, N.A. (at New York or Brooklyn, New York, USA) (the, "SBLC"), of which Lender shall be the sole beneficiary and upon which Lender shall be entitled, *inter alia,* to immediate payment upon demand for all sums due and payable upon the occurrence and continuation of any Event of Default under any Loan Document without any further condition or contingency.

(b)    In addition, Borrower hereby grants to Lender a security interest in the SBLC, which security interest will be perfected by delivering the said SBLC to Lender immediately upon its issuance and the filing of a UCC-1 financing statement with regard to the same, to which Borrower hereby consents.

(c)    In addition, Borrower further hereby grants to the Lender a security interest and a right of setoff as security for all Obligations upon and against all deposits, credits, collateral and property of Borrower that are now or hereafter are in the possession, custody, safekeeping or control of the Lender or any entity under the control of the Lender, or in transit to any of them. At any time following the occurrence of an Event of Default (that has not been waived in writing by the Lender), but only while it is continuing, without demand or notice, the Lender may set off the same or any part thereof and apply the same to any Obligations even though unmatured and regardless of the adequacy of any other collateral securing the Loan. ANY AND ALL RIGHTS TO REQUIRE THE LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LOAN, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF THE BORROWER, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED. The Lender shall not be required to marshal any present or future security for, or guarantees of the obligations or to resort to any such security or guarantee in any particular order and the Borrower waives, to the fullest extent that it lawfully can, (a) any right Borrower might have to require the Lender to pursue any particular remedy before proceeding against it and (b) any right to the benefit of or to direct the application of the proceeds of any collateral until the Obligations are paid in full.

{Y0216847} v6                                                    9

## ARTICLE V - REPRESENTATIONS AND WARRANTIES

**Representations and Warranties.** In addition to the representations and warranties contained in the Note or any other Loan Documents, the Borrower hereby makes the following representations and warranties which shall be true and correct on the date hereof and shall continue to be true and correct until the Loan shall have been paid in full:

5.01. **Use of Proceeds.** The proceeds of the Loan hereunder shall be used by the Borrower for the business purposes stated in the Commitment Letter and herein. No portion of the Loan is to be used for (i) the purpose of purchasing or carrying any "margin security" or "margin stock" as such terms are used in Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. sections 221 and 224, or (ii) primarily personal, family or household purposes.

5.02. **Legally Enforceable Agreements.** The Obligors have the power to execute, deliver, and perform this Agreement and the other Loan Documents to which they are parties and when executed and delivered this Agreement and the other Loan Documents shall be legally valid and binding obligations of the Borrower, and other Obligors, as the case may be, enforceable in accordance with their terms.

5.03. **Organization, Good Standing and Due Qualification.** If the Borrower and any other Obligor or any general partner of Borrower or of any other Obligor is a corporation or a partnership or a limited liability company, the Borrower or such other Obligor or general partner is duly organized, validly existing, and in good standing under the laws of the jurisdiction in which the Borrower, other Obligor or general partner is incorporated or formed; has the power and authority to own its assets and to transact the business in which it is now engaged or proposed to be engaged in; and is duly qualified and in good standing under the laws of each other jurisdiction in which such qualification is required.

5.04. **Due Authorization.** The execution, delivery and performance of this Agreement and the other Loan Documents by the Borrower have been duly authorized by all corporate or partnership or company actions required for the lawful creation and issuance of such documents and, to the best of Borrower's knowledge, information and belief, will not violate any provisions of law, any order of any court or governmental agency, the charter documents and by-laws or partnership agreement or operating agreement of, the Borrower.

5.05. **Conflicts.** To the best of Borrower's knowledge, information and belief, the execution, delivery and performance of this Agreement and the Loan Documents will not violate any provision of any indenture, agreement, or other instrument to which the Borrower or any other Obligor or any of their properties or assets are bound, and will not be in conflict with, result in a breach of, or constitute (with due notice and/or lapse of time) a default under any such indenture, agreement, or other instrument, or result in

{Y0219647} v6

10

the creation or imposition of any lien, charge, or encumbrance of any nature whatsoever upon any of said properties or assets.

5.06.   **Consents.**  To the best of Borrower's knowledge, information and belief, no authorization, consent, approval, license or exemption of, and no registration, qualification, designation, declaration or a filing with any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign is necessary to the valid execution and delivery by the Borrower of this Agreement and the other Loan Documents.

5.07.   **Financial Statements; Accuracy of Information.**

(a)     The most recent financial statements of Borrower delivered to the Lender are true and correct and represent fairly their financial position as of the date thereof and the results of their operations or affairs for the period indicated, and show (including the footnotes) all known liabilities, direct or contingent, of Borrower, as of the date thereof, all consistent with the methodology of such statements previously provided by Borrower to Lender, or, otherwise, in accordance with GAAP consistently applied (the, "Financial Reporting Standard"). Since the date of such financial statements, there has been no material adverse change in condition, financial or otherwise, of the Borrower, or in its business and properties and, since such date, Borrower, has not incurred, other than in the ordinary course of business, any indebtedness, liabilities, obligations or commitments, contingent or otherwise, except as otherwise reported to the Lender in writing. No information, exhibit, or report furnished by the Borrower, to the Lender in connection with the negotiation of this Agreement contained any material misstatement of fact or omitted to state a material fact or any fact necessary to make the statement contained therein not materially misleading. All projections delivered by the Borrower to the Lender were made on a reasonable basis and in good faith. Except as disclosed to the Lender in writing, the Borrower, has no material contingent liabilities (including liabilities for unpaid taxes), unusual forward or long-term commitments or unrealized or anticipated losses from unfavorable commitments.

(b)     All information, financial statements, exhibits, and reports furnished by the Borrower, to the Lender in connection with this Agreement and the borrowings contemplated hereby are, and all such information, financial statements, exhibits and reports hereafter furnished by the Borrower, to the Lender will be true and correct in every material respect on the date furnished to the Lender, and no such information, financial statements, exhibit or report contains or will contain any material misstatement of fact or omits or will omit to state a material fact or any fact necessary to make the statement contained therein not materially misleading.

5.08.   **Litigation.**  Except as previously disclosed in writing to the Lender prior to the date hereof, there is no pending or, to the knowledge of Borrower, threatened action or proceeding against or affecting the Borrower before any court, governmental agency, or arbitrator which may, in any one case or in the aggregate, materially adversely affect

the financial condition, operations, properties or business of the Borrower or the ability of Borrower to perform their obligations under any Loan Documents.

5.09.  **Other Agreements**.  Borrower is not a party to any indenture, loan, or credit agreement, or to any lease or other agreement or instrument, or subject to any charter or corporate restriction which could have a material adverse effect on the business, properties, assets, operations, or conditions, financial or otherwise, of the Borrower, or the ability of the Borrower to carry out its obligations under the Loan Documents to which it is a party. To the best of Borrower's knowledge, information and belief, Borrower is not in default in any respect in the performance, observance, or fulfillment of any of the obligations, covenants, or conditions contained in any agreement or instrument material to its business to which it is a party.

5.10.  **No Defaults and Outstanding Judgments or Orders**.  To the best of its knowledge, information and belief, Borrower has satisfied all judgments and is not in default with respect to any judgment, writ, injunction, decree, rule, or regulation of any court, arbitrator, or federal, state, municipal, or other Governmental Authority, commission, board, bureau, agency or instrumentality, domestic or foreign.

5.11.  **Taxes**.  The Borrower has filed all tax returns (federal, state, and local) required to be filed and have paid all taxes, assessments, and governmental charges and levies due thereon, including interest and penalties.

5.12.  **Debt**.  The Borrower is not indebted under any credit agreement, indenture, purchase agreement, guaranty, or other investment, agreement, or arrangement except as disclosed in the Borrower's financial statements referred to herein or except Debt if any, which is specifically permitted by the terms of this Agreement.

5.13.  **Environment**.  To the best of Borrower's knowledge, information and belief, the Borrower has duly complied with, and its businesses, operations, assets, equipment, property, leaseholds, or other facilities (including, but not limited to, the Premises) are in compliance with, the provisions of all Environmental Laws, and all health and safety laws and codes, and all rules and regulations promulgated thereunder; and has not received notice of, or knows of, a violation of any Environmental Law, or any health and safety law and code, or any rules or regulations promulgated thereunder, with respect to its businesses, operations, assets, equipment, property, leaseholds, or other facilities (including, but not limited to, the Premises).

5.17.  **Anti-Terrorism Statutes**

(a)    **General**.  The Borrower is not in violation of any Anti-Terrorism Statute nor does it engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Statute.

(b)   **Executive Order No. 13224**.   Neither the Borrower nor to the Borrower's knowledge, its Affiliates or agents acting or benefiting in any capacity in connection with any of transactions contemplated by this Agreement, is any of the following (each a "Blocked Person"):

(i)   A Person (as defined in the Anti-Terrorism Statute) that is listed in the annex to, or is otherwise subject to the provisions of, the Executive Order No. 13224;

(ii)   A Person owned or controlled by, or acting for or on behalf of, any Person that is listed in the annex to, or is otherwise subject to the provisions of, the Executive Order No. 13224;

(iii)   A Person or entity with which the Lender is prohibited from dealing or otherwise engaging in any transaction by any Anti-Terrorism Statute;

(iv)   A Person or entity that commits, threatens or conspires to commit or supports "terrorism" as defined in the Executive Order No. 13224;

(v)   A Person or entity that is named as a "specially designated national" on the most current list published by the U.S. Treasury Department Office of Foreign Asset Control at its official website or any replacement website or other replacement official publication of such list; or

(vi)   A Person or entity who is an Affiliate of a Person or entity listed above.

Neither the Borrower nor or to the Borrower's knowledge, any of its Affiliates or agents acting in any capacity in connection with the advances made hereunder or other transactions contemplated hereby, (A) conducts any business with, or engages in making or receiving any contribution of funds, goods or services to or for the benefit of any Blocked Person, or (B) deals in, or otherwise engages in any transaction relating to, any property or interests in property blocked pursuant to the Executive Order No. 13224.

(c)   **Sanctioned Persons**.   None of Borrower, its subsidiaries or its Affiliates is a Person (i) named on the list of Specially Designated Nationals or Blocked Persons maintained by the United States Department of the Treasury's Office of Foreign Assets Control or any successor thereto ("OFAC") available at http://www.treas.gov/offices/eotffc/ofac/sdn/index.html or as otherwise published from time to time, or (ii) (A) an agency of the government of a Sanctioned Country (as defined below), (B) an organization controlled by a Sanctioned Country, or (c) a Person resident in a Sanctioned Country, to the extent subject to a sanctions program administered by OFAC (each a "Sanctioned Person").

(d)   <u>Sanctioned Countries</u>.  None of Borrower, its subsidiaries or its Affiliates does business in a country subject to the sanctions program identified on the list maintained by OFAC and available at http://www.treas.gov/offices/eotffc/ofac/sanctions/index.html, or as otherwise published from time to time (a "Sanctioned Country").

(e)   <u>Use of Loan Proceeds</u>.  The proceeds of any Loan will not be used to fund any operation in, finance any investments or activities in or make any payments to, a Sanctioned Person or a Sanctioned Country.

5.19.   <u>Accurate and Complete Disclosure</u>.  No representation or warranty made by the Borrower under this Agreement or any Loan Document, is false or misleading in any material respect (including by omission of material information necessary to make such representation, warranty or statement not misleading).  The Borrower has disclosed to the Lender in writing every fact which materially and adversely affects the business, operations or financial condition of the Borrower or the ability of the Borrower to perform its obligations under this Agreement or any Loan Document.

## ARTICLE VI - AFFIRMATIVE COVENANTS

<u>Affirmative Covenants of Obligors</u>.  In addition to the covenants contained in the Loan Documents, the Borrower hereby covenants and agrees that, so long as any part of the Loan is outstanding, the Borrower shall, except as the Lender may otherwise agree in writing:

6.01.   <u>Financial Statements</u>. Furnish to Lender financial statements of Borrower in form and substance as requested by Lender, within one hundred twenty (120) days after the end of each fiscal year.  Such financial statements shall be true and correct and shall present fairly, accurately and completely the financial position of Borrower all in accordance with the Financial Reporting Standard. Such financial statements shall include statements of income and retained earnings, balance sheets, and statements of cash flow and of changes in financial position of Borrower, for the applicable period, all in reasonable detail.  Such statements shall be certified as to their correctness by a principal financial officer of Borrower.

6.02.   <u>Tax Returns</u>. Provide Lender with signed copies of all federal, state, and local tax returns required to be filed by Borrower for each fiscal or calendar year, prepared by a CPA.  The said tax returns shall be provided to Lender within one hundred twenty (120) days after the end of each fiscal year.

6.03.   <u>Payment of Taxes</u>.  Duly pay and discharge all taxes, assessments and governmental charges levied upon or assessed against it, its properties, or its income prior to the date on which penalties are attached thereto, and upon request, deliver to the Lender a receipt from the applicable Governmental Authority evidencing said payment, unless and except to the extent only that such taxes, assessments and charges shall be contested in good faith by appropriate proceedings diligently conducted (unless and until

foreclosure, distraint, sale or other similar proceedings shall have been commenced) and provided that such reserves as shall be required by generally accepted accounting principles shall have been made therefor.

6.04. **Access to Properties, Books and Records**.   Permit any of the officers, employees or representatives of the Lender, upon reasonable advance notice, to visit and inspect the Premises and to examine Borrower's books and records and make extracts therefrom and discuss the affairs, finances, and accounts of the Borrower with representatives thereof, during normal business hours, and as often as the Lender may reasonably request.

6.05. **Maintenance of Records**. Keep adequate records and books of account, in which complete entries were made in accordance with the Financial Reporting Standard, reflecting all material financial transactions of the Borrower.

6.06. **Maintenance of Existence**.  Preserve and maintain its existence and good standing in the jurisdiction of its formation, and qualify and remain qualified as a foreign entity in each jurisdiction in which such qualification is required.

6.07. **Future Condition**. Notify the Lender promptly, in writing, to the extent it would materially adversely affect the business operations or financial condition of the Borrower or any other Obligor, of (i) the institution of any litigation; (ii) the commencement of any administrative proceedings; or (iii) the happening of any other such event.

6.08. **Other Obligations**.   Maintain all obligations of Borrower in whatsoever manner incurred, including, but not limited to, obligations for borrowed money or for services or goods purchased by Borrower, in a current status.

6.09. **Reimbursement for Certain Expenses**.  Pay or reimburse the Lender upon written demand with evidence of amount owing and save the Lender harmless against liability for the payment of all reasonable out-of-pocket expenses, including without limitation reasonable legal fees and costs, appraisal fees, audit fees, title search fees, environmental audit fees, and any broker fees, incurred by the Lender (i) arising in connection with the development, preparation, execution and performance of this Agreement, any other Loan Document, and all related transactions, (ii) relating to any requested amendments, waivers, or consents pursuant to the provisions hereof, (iii) arising out of or in connection with any action or proceeding (including any action or proceeding arising in or related to any insolvency, bankruptcy, or reorganization involving or affecting the Borrower or any other Obligor of the Borrower) taken to protect, enforce, determine or assert any right or remedy under this Agreement or any Loan Document or in any Collateral securing any Obligations evidenced by any Loan Document, or (iv) resulting from or arising out of or in connection with the administration of this Loan or the breach of any representation or warranty of the Borrower or any other Obligor made herein or in any other Loan Document. Except to the extent prohibited by applicable law, the Borrower shall also be obligated to pay all fees and costs incurred or charged for the release or satisfaction of any liens against or upon any of the Collateral, which fees and

costs shall be paid promptly upon the satisfaction or release of such liens. The Lender may also, at its discretion, deliver to the Borrower the documents necessary for satisfaction or release of any lien in favor of Lender against any Collateral, and in such case it shall be the responsibility of the Borrower to record or file such satisfaction or release, as applicable, with the appropriate entity and to pay all costs incurred thereby.

6.10.  **Intentionally Omitted**.

6.11.  **Compliance with Laws**.  Comply with, and cause each other Obligor to, comply with all applicable laws (including but not limited to any applicable tax law, product safety law, occupational safety or health law, environmental protection or pollution control law, hazardous waste or toxic substances management, handling or disposal law) in all respects, provided that the Borrower shall not be deemed to be in violation of this Section as a result of any failures to comply which would not result in fines, penalties, injunctive relief or other civil or criminal liabilities which, in the aggregate, would materially affect the business, operations or financial condition of the Borrower or of any Obligor or the ability of the Borrower or of any Obligor to perform its obligations under any Loan Document to which it is a party.

6.12.  **Consequential Damages.**  The Lender shall not be responsible or liable for any damages, consequential or otherwise, that may be incurred or alleged by Borrower or by any other person or entity, including any Obligor, as a result of any of the Loan Documents or the exercise of the terms thereof by Lender or the collection by or on behalf of the sums due thereunder, unless such damages are incurred as a result of the gross negligence or willful misconduct of the Lender, its employees or agents.

6.13.  **Reporting Requirements.**  Furnish, or cause to be furnished, to the Lender:

(a)    Promptly after the commencement thereof, notice of all actions, suits, and proceedings before any court or governmental department, commission, board, bureau, agency, or instrumentality, domestic or foreign, affecting the Borrower which, if determined adversely to the Borrower could have material adverse effect on the financial condition, properties, or operations of the Borrower; and

(b)    Upon the occurrence of an Event of Default, a written notice setting forth the details of such Event of Default and the action which is proposed to be taken by the Borrower with respect thereto;

(c)    Prompt notification, to the extent it would materially adversely affect the business operations or financial condition of the Borrower, of (i) the institution of any litigation; (ii) the commencement of any administrative proceedings; or (iii) the happening of any other such event; and,

(d)    Such other information respecting the condition or operations, financial or otherwise, of the Borrower as the Lender may from time to time reasonably request.

6.14   **Further Assurances.** The Borrower agrees to do such further acts and things and to execute and deliver to the Lender such additional assignments, agreements, powers and instruments, as the Lender may reasonably require or reasonably deem advisable to carry into effect the purposes of this Agreement or to better assure and confirm unto the Lender its rights, powers and remedies hereunder.

6.15   **Maintenance of Accounts.**  For so long as any sum is due and owing on the Loan, Borrower shall maintain its primary deposit relationship with Lender.

6.16.   **Notice of Additional Debt.**  Notify Lender, in writing, if Borrower creates, incurs, assumes or suffers to exist any Debt other than: (i) Debt evidenced by the Note or any other note of Borrower or any other Obligor payable to the order of the Lender; (ii) trade accounts payable, rentals payable under leases and other Debt (except for money borrowed) incurred in the ordinary course of business; (iii) Debt existing on the date hereof and disclosed in the Borrower's financial statements referred to herein; and (iv) Debt secured by Liens for which Lender has given its written consent.

## ARTICLE VII - NEGATIVE COVENANTS

**Negative Covenants of Borrower.** In addition to the covenants contained in the Loan Documents, Borrower hereby covenants and agrees that, so long as any part of the Loan is outstanding, the Borrower shall not, except as Lender may otherwise agree in writing:

7.01   **Transfer of Assets.**  Sell, transfer or assign any assets, whether now owned or hereafter acquired, except as permitted in the ordinary course of business for value received; or acquire stock or other equity interest of another entity, except in the ordinary course of business.

7.02.   **Management and Ownership.**  Except as permitted under Section 10.17 hereof, make any significant change in its management, or permit a transfer of the majority of its capital or other voting stock or ownership or partnership interest, to others than the present holders thereof.

7.03.   **Hazardous Materials; Indemnification.**   Use, generate, treat, store, dispose of or otherwise introduce, any Hazardous Materials or Regulated Substances into or on any real property owned or leased by it (including, but not limited to, the Premises), and will not cause, suffer allow or permit anyone else to do so, except in an environmentally safe manner through methods which have been approved by and meet all of the applicable standards of all federal, state or local agencies with authority to enforce Environmental Laws.

## ARTICLE VIII - EVENTS OF DEFAULT

**Events of Default.** The occurrence of any of the following shall, subject to such rights to cure herein, if any, constitute an Event of Default hereunder:

8.01.  Borrower fails to pay when due any sums required to be paid in this Agreement.

8.02    Borrower fails to observe or perform any other terms, conditions, covenants and agreements of this Agreement, and such failure or default continues for thirty (30) days (or such longer or shorter period of time as may herein expressly be provided) after written notice from Lender; provided, however, that if such default is susceptible to cure but such cure cannot be accomplished with reasonable diligence within such period of time, and if Borrower commences to cure such default promptly and thereafter prosecutes the curing of such default with reasonable diligence, such period of time shall be extended to such period of time (not to exceed an additional ninety (90) days) as may be necessary to cure such default with reasonable diligence.

8.03.  If any representation or warranty made by the Borrower in this Agreement or which is contained in any certificate, document, opinion, financial or other statement furnished at any time in connection with this Agreement shall prove to have been incorrect, incomplete, or misleading in any material respect on or as of the date made.

8.04.  The occurrence of any Event of Default under the Note or any other Loan Document for so long as it is continuing.

8.05    The failure to execute and/or deliver, or the invalidity of any document required to be executed and delivered at Closing pursuant to Section 3.01 of this Agreement.

## ARTICLE IX - REMEDIES

9.01.  **Remedies of Lender**.  Upon the occurrence of an Event of Default, and while it is continuing, the Lender may if it so elects, without any notice or demand to Borrower (or to any other Obligor) whatsoever (which notice or demand is expressly waived, except to the extent otherwise specifically provided herein or in the other Loan Documents), exercise any or all (or none) of the following rights and remedies (all of which rights and remedies shall be cumulative) as the Lender, in its sole discretion, may deem necessary or appropriate:

(a)    Declare immediately due and owing all outstanding Loan sums or other Obligations due to Lender hereunder or under any of the Loan Documents.

(b)    Exercise all or any of its rights or remedies granted herein, or in the Note and/or any of the other Loan Documents (including, but not limited to the right to set off any or all of the Obligations of Borrower against any or all of the property of Borrower or any other Obligor in the possession or control of Lender) or under applicable law, or which it may otherwise have, against the Borrower or any other Obligor or otherwise.

9.02.  <u>CONFESSION OF JUDGMENT</u> - a) THE FOLLOWING PARAGRAPH SETS FORTH A WARRANT OF AUTHORITY FOR AN ATTORNEY TO CONFESS JUDGMENT AGAINST THE BORROWER. IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST THE BORROWER, THE BORROWER HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, AND, ON THE ADVICE OF ITS SEPARATE COUNSEL, UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS THE BORROWER HAS OR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING UNDER THE RESPECTIVE CONSTITUTIONS AND LAWS OF THE UNITED STATES AND THE COMMONWEALTH OF PENNSYLVANIA.

b)     UPON THE OCCURRENCE AND DURING THE CONTINUANCE OF AN EVENT OF DEFAULT (OF WHICH AN AFFIDAVIT ON BEHALF OF LENDER SHALL BE SUFFICIENT EVIDENCE), THEN THE BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR FOR AND TO ENTER AND CONFESS JUDGMENT AGAINST THE BORROWER, AT ANY TIME OR TIMES AND AS OF ANY TERM, FOR THE PRINCIPAL SUM ABOVE MENTIONED, WITH OR WITHOUT DECLARATION, WITH INTEREST AND COSTS OF SUIT, WITHOUT STAY OF EXECUTION, AND WITH REASONABLE ATTORNEY'S FEES.  THE BORROWER AGREES THAT ANY OF ITS PROPERTY MAY BE LEVIED UPON TO COLLECT SAID JUDGMENT AND MAY BE SOLD UPON A WRIT OF EXECUTION, AND HEREBY WAIVES AND RELEASES ALL LAWS, NOW OR HEREAFTER IN FORCE, RELATING TO EXEMPTION, APPRAISEMENT OR STAY OF EXECUTION.    THE AUTHORITY HEREBY GRANTED TO CONFESS JUDGMENT SHALL NOT BE EXHAUSTED BY ANY EXERCISE THEREOF, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL THE BORROWER HAS PAID ALL SUMS REQUIRED TO BE PAID BY THE BORROWER UNDER THIS LOAN AND SECURITY AGREEMENT AND/OR THE NOTE AND HAVE PERFORMED ALL OF THE OTHER PROVISIONS HEREOF OR THEREOF TO BE PERFORMED BY THE BORROWER.

c)     IF BORROWER WISHES TO CHALLENGE ANY JUDGMENT CONFESSED PURSUANT TO THIS PARAGRAPH, THEY SHALL DO SO ONLY BY FILING A PETITION TO OPEN THE JUDGMENT PURSUANT TO PENNSYLVANIA RULES OF CIVIL PROCEDURE RULE 2959, AS IN EFFECT FROM TIME TO TIME, ("RULE 2959") AND SHALL NOT OTHERWISE INTERFERE (BY FILING ANY CIVIL ACTION, BILL IN EQUITY, OR OTHERWISE) WITH THE OPERATION OF THE JUDGMENT GRANTED PURSUANT TO THIS SECTION. BORROWER EXPRESSLY ACKNOWLEDGES THAT THE PROCEDURE AVAILABLE TO IT THROUGH RULE 2959 WILL PROVIDE IT WITH A FULL AND FAIR OPPORTUNITY TO BE HEARD AS TO ANY REASON WHY JUDGMENT SHOULD NOT BE ENTERED AGAINST IT.

d)     THE BORROWER ACKNOWLEDGES THAT IT UNDERSTANDS THE MEANING AND EFFECT OF THE CONFESSION CONTAINED IN THE FOREGOING PARAGRAPHS. SPECIFICALLY, THE BORROWER UNDERSTANDS

{Y0218847} v6                                                    19

AMONG OTHER THINGS THAT (1) IT IS RELINQUISHING THE RIGHT TO HAVE NOTICE EXCEPT AS PROVIDED HEREIN OR IN THE OTHER LOAN DOCUMENTS, AN OPPORTUNITY TO BE HEARD AND THE RIGHT TO HAVE THE BURDEN OF PROOF OF DEFAULT REST ON LENDER PRIOR TO THE ENTRY OF JUDGMENT, (2) THE ENTRY OF JUDGMENT MAY RESULT IN A LIEN ON ITS PROPERTY, (3) IT WILL BEAR THE BURDEN AND EXPENSE OF ATTACKING THE JUDGMENT AND CHALLENGING EXECUTION ON THE LIEN AND SALE OF PROPERTY COVERED THEREBY, AND (4) ENOUGH OF ITS PROPERTY MAY BE TAKEN TO PAY THE PRINCIPAL AMOUNT, INTEREST, COSTS AND ATTORNEY'S FEES.

9.03. **Failure to Exercise Remedies.**  Neither failure nor delay on the part of the Lender to exercise any right, remedy, power or privilege hereunder or under any Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder or under any Loan Document preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The acceptance by the Lender of any partial payments on the Loan or any other Obligations made by or on behalf of the Borrower after the occurrence of an Event of Default hereunder or under any Loan Document shall not be deemed a waiver or cure by the Lender of said Event of Default unless expressly agreed in writing by the Lender.

ARTICLE X - MISCELLANEOUS

10.01. **Modifications.**  Modifications, waivers or amendments of or to the provisions of this Agreement or any other Loan Document shall be effective only if set forth in a written instrument signed by the party against whom same is sought to be enforced.

10.02. **Binding Nature.**  The rights and privileges of the Lender contained in this Agreement shall inure to the benefit of its successors and assigns, and the duties of the Borrower shall bind all heirs, personal representatives, successors and assigns.  All agreement, representations, warranties and covenants made by the Borrower herein or in any of the other Loan Documents shall survive the execution and delivery of this Agreement and all other documents referred to herein and shall be continuing as long as any portion of any Obligations owed to the Lender hereunder shall remain outstanding and unpaid.

10.03. **Joint and Several Obligation.**  If more than one Borrower shall sign this Agreement, then this Agreement shall be the joint and several obligation of each such Borrower and each Borrower shall be deemed to have made the promises, representations and warranties herein set forth.

10.04. **Governing Law.**  This Agreement and all of the Loan Documents, except as otherwise expressly stated therein, shall in all respects be governed by the laws of the Commonwealth of Pennsylvania and construed as if drafted equally by all parties hereto.

{Y0219647} v6

10.05.  **Time of Performance**.  Time of performance hereunder is of the essence of this Agreement.

10.06.  **Severability**.  If any provision hereof shall for any reason be held invalid or unenforceable, no other provision shall be affected thereby, and this Agreement shall be construed as if the invalid or unenforceable provision had never been a part of it.

10.07.  **Captions**.  The descriptive headings hereof are for convenience only and shall not in any way affect the meaning or construction of any provision hereof.

10.08.  **Computations**.  Except as otherwise expressly stated herein, all computations required herein shall be made by the application of GAAP.

10.09.  **Continuing Obligation**.  If any claim is ever made upon the Lender for the repayment or return of any money or property received by the Lender from any other Obligor in payment of the Loan or any other Obligations, and the Lender repays or returns all or part of said money or property by reason of (i) any judgment, decree or order of any court or administrative body having jurisdiction over the Lender or any of its property or (ii) any settlement or compromise of any such claim accomplished by Lender with such claimant, then in such event the Borrower agrees that any such judgment, decree, settlement or compromise shall be binding upon Borrower, notwithstanding any termination hereof or the cancellation of any note or other instrument evidencing the Loan or the Obligations, and the Borrower shall be and shall remain liable to the Lender hereunder for the amount so repaid or the value of the property returned to the same extent as if such had never originally been received by the Lender.  The Borrower agrees that the Lender shall have no duty or affirmative obligation to defend against such claim and may object to or pay such claim in its sole discretion without impairing or relinquishing the obligations of the Borrower hereunder.  This provision shall survive the termination of this Agreement.

10.10.  **Assignment and Participation**.  This Agreement may not be assigned by the Borrower or any other Obligor.  This Agreement, or all or any portion of the Obligations evidenced hereby, may be assigned, or participations therein sold, by the Lender in whole or in part.  The Borrower hereby authorizes the Lender to disclose (or ratifies any disclosures made by the Lender) any and all information that the Lender may from time to time possess regarding the Borrower, or the Loan or any other Obligations, or the Premises or any other Collateral, or the Loan Documents to any financial institution and to any accountants, appraisers, or other third parties acting on behalf of such institution, to which the Lender seeks to assign the Loan or any other Obligations or to sell a participation interest in the Loan or any other Obligations provided such party agrees to keep same confidential.  The foregoing is not to be understood as a limitation upon any other right or duty the Lender may have to make any disclosure to anyone under the Loan Documents or as required by law.

10.11. **Notices**.

(a)     All notices or other communications required or permitted to be made upon any party hereunder shall be in writing and sent by (i) hand delivery or (ii) national overnight express courier with written verification of actual delivery, or (iii) by first-class, United States mail, postage prepaid, registered or certified with return receipt requested. Such notice shall be delivered or sent to the address set forth above or at such other address of which either party shall have given the other by notice in writing in accordance with the foregoing.

(b)     Notice sent by overnight courier or mailed in accordance with the foregoing shall be effective three (3) business days following deposit, or sooner upon receipt. Notice given in any other manner permitted herein shall be effective only if and when received by the addressee.

(c)     Notice given to either party by the attorney for the other party shall constitute notice from such party (and the attorneys for each party are hereby permitted to give such notice to the other party on behalf of their client). Failure to provide copies of any notice to counsel as provided above shall not invalidate or limit the effect of such notice.

10.12. **Cumulative Remedies**.  The rights and remedies provided hereunder are cumulative and not exclusive of any rights or remedies (including without limitation, the right of specific performance) which Lender would otherwise have. Any waiver, consent or approval of any kind or character on the part of the Lender of any Event of Default or Potential Default of this Agreement or any Loan document or any such waiver of any provision or condition hereof or thereof must be in writing and shall be effective only to the extent in such writing specifically set forth. Borrower acknowledges that with respect to this Agreement and its terms Borrower is neither authorized nor entitled to rely on any representations, course of dealing, modifications or assurances in any form as to any subject from any officer of the Lender unless and until such representations, modifications, course of dealing, or assurances are set forth in writing and signed by such officer of the Lender.

10.13. **Third Party Beneficiaries**.  The parties do not intend the benefits of this Agreement to inure to any third party. Notwithstanding anything contained herein or in the Mortgage, Note or any other Loan Document executed in connection with this transaction, or any conduct or course of conduct by either or both of the parties hereto, or their respective Affiliates, agents, or employees, before or after the signing of this Agreement or any of the other aforesaid Loan Documents, this Agreement shall not be construed as creating any rights, claims, or causes of action against the Lender, or any of its officers, directors, agents, or employees, in favor of any person or entity other than the Borrower.

10.14. **Prior Understandings**.   This Agreement and the Loan Documents supersede all prior understandings and agreements, whether written or oral, between the parties hereto and thereto relating to the transactions provided for herein or therein.

10.15. **Intentionally Omitted.**

10.16. **Indemnification**.   The Borrower agrees to protect, indemnify, defend and save harmless the Lender and its directors, officers, agents and employees from and against any and all liability, expense, or damage of any kind or nature and from any suits, claims or demands, including reasonable legal fees and expenses on account of any matter or thing, whether in suit or not, arising out of this Agreement or in connection therewith or on account of any act or omission to act by the Lender in connection with this Agreement, unless brought about by gross negligence or willful misconduct of the Lender, its employees or agents.   This obligation shall survive the repayment of the Loan.

10.17. **Restrictions on Transfer.**

(a)   Unless Fred Rappaport and/or George Popky retain management control of Borrower, any issuance or transfer of stock in Borrower, or that in the aggregate effects a transfer of the majority (or other controlling interest) of Borrower, without the prior written consent of the Lender, which consent shall not be unreasonably delayed or withheld, shall constitute an immediate Event of Default hereunder and under the other Loan Documents.

(b)   Any consent of Lender to a sale or transfer of all or part of the interests of Borrower and any other Obligor in the Premises or an issuance or transfer of stock, partnerships or memberships or of any other interests in Borrower or any other Obligor (if required hereunder) shall pertain to the referenced sale, transfer or issuance only and shall not constitute, or obligate Lender to approve, any further sale, transfer or issuance or relieve any person of any liability hereunder or under the Note or any other Loan Document.

10.18. **Relationship of Parties**.   It is hereby acknowledged by Lender and Borrower that the relationship between them created hereby and by the other Loan Documents is that of creditor and debtor and is not intended to be and shall not in any way be construed to be that of a partnership, a joint venture, or principal and agent; and it is hereby further acknowledged that disbursement of any Loan proceeds by Lender to anyone other than Borrower shall not be deemed to make Lender a partner, joint venturer, or principal or agent of Borrower, but rather shall be deemed to be solely for the purpose of protecting Lender's security for the Obligations evidenced by the Note and other Obligations of Borrower to Lender.

10.19. **No Implied Waiver**.   No delay or failure of the Lender in exercising any right, power, or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise thereof or any abandonment or discontinuance of steps to enforce

such a right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

10.20. <u>Taxes</u>. The Borrower agrees to pay or cause to be paid any and all stamp, document, transfer or recording taxes, and similar impositions payable or hereafter determined to be payable in connection with the Loan Documents, and agrees to save the Lender harmless from and against any and all present or future claims or liabilities with respect to, or resulting from, any delay in paying or omission to pay, any such taxes or similar impositions.

10.21. <u>EXCLUSIVE JURISDICTION</u>.   IN ANY LEGAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY LOAN DOCUMENT OR THE RELATIONSHIP EVIDENCED HEREBY, THE BORROWER HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION THE COURTS OF COMMON PLEAS OF BUCKS COUNTY AND THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA. THE BORROWER EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND THE BORROWER HEREBY WAIVES ANY OBJECTION WHICH THE BORROWER MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, OR <u>FORUM NON CONVENIENS</u>. THE BORROWER HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS, COMPLAINT AND ANY OTHER PROCESS ISSUED IN ANY SUCH ACTION OR SUIT AND AGREES THAT SERVICE OF SUCH SUMMONS, COMPLAINT, AND ANY OTHER PROCESS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO THE BORROWER AT THE ADDRESS SET FORTH ABOVE AND THAT SERVICE SO MADE SHALL BE DEEMED COMPLETED UPON THE PROVIDING OF NOTICE IN ACCORDANCE WITH THE TERMS HEREOF. NOTHING IN THIS AGREEMENT SHALL BE DEEMED OR OPERATE TO AFFECT THE RIGHTS OF THE LENDER TO SERVE LEGAL PROCESS IN ANY OTHER MANNER PERMITTED BY LAW, OR TO PRECLUDE THE ENFORCEMENT BY THE LENDER OF ANY CLAIM, OR ANY JUDGMENT OR ORDER OBTAINED IN SUCH FORUM, OR THE TAKING OF ANY ACTION UNDER THIS AGREEMENT OR OTHERWISE TO ENFORCE SAME, IN ANY OTHER APPROPRIATE FORUM OR JURISDICTION.

10.22. <u>TRIAL BY JURY</u>. BORROWER HEREBY IRREVOCABLY WAIVES ANY RIGHT OR CLAIM TO A JURY TRIAL IN REGARD TO ANY AND ALL ACTIONS AND PROCEEDINGS INVOLVING LENDER, WHETHER ARISING HEREUNDER OR UNDER ANY OTHER LOAN DOCUMENT.   THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO ADVANCE THE LOAN AND TO ACCEPT OR RELY UPON THE LOAN DOCUMENTS.

10.23.      <u>USA Patriot Act Notice</u>.  To help fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.  For purposes of this section, account shall be understood to include loan accounts.

{Y0219847} v6                                24

The Borrower acknowledges that it has read and understood all of the provisions of this Agreement, including the waiver of jury trial, and has been advised by counsel as necessary and appropriate.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the parties hereto have caused Agreement to be executed, under seal, by affixing their respective hands and seals the day and year first above written.

**BORROWER:**
**LIFESTYLE HEALTHCARE GROUP, INC.**
a Delaware corporation

Attest:

By: _____
Fred Rappaport, Chief Executive Officer

**LENDER:**
**CUSTOMERS BANK**

Witness:

By: _____
Bonnie Halbreiner
Senior Vice President

{Y0219847} v6                                    25